1
2
3
4

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

5

6  NAHUM RAND,

7                    Plaintiff,                                        2:15-cv-00976-RCJ-VCF

8            vs.                                                       **ORDER**

9  INFONOW CORPORATION et al.,

10                    Defendants.

11

12          This case arises from Defendant InfoNow Corporation's ("INOW") alleged breach of its

13  employment agreement with Plaintiff Nahum Rand ("Rand").  Pending before the Court is

14  INOW's Motion to Transfer (ECF No. 6) the case to the District of Colorado.  For the reasons

15  contained herein, the Motion is granted.

16  **I.      FACTS AND PROCEDURAL HISTORY**

17          Rand is a founding shareholder of INOW, a channel data management ("CDM") services

18  provider, and was employed by the company for over seventeen years. (Compl. ¶ 5, ECF

19  No. 1-1).  In 2006, Rand's compensation plan was amended so that he would no longer receive a

20  monthly base salary but would be paid through commissions and INOW common stock. (*Id.*

21  ¶ 6).  This arrangement was reaffirmed most recently on January 1, 2012 when Rand and INOW

22  signed a Sales Commission Plan ("SCP") that dictated the percentages of sales Rand would

23  receive as his commission. (*See* SCP 5–7, ECF No. 14-1).  The SCP assigned all booked

24

business with INOW client Hewlett Packard ("HP") to Rand. (*Id.* at 9).  The parties also agreed that Rand would receive a ninety-day written notice from INOW before any modification to the SPC would be made. (*Id.* at 7).

On May 8, 2008, Rand and INOW also entered into a Confidentiality Agreement ("CA") that included protection of INOW's trade secrets, a prohibition against unfair competition, a covenant of non-solicitation, and an assignment to INOW of all inventions discovered by Rand in the course of his employment. (*See* CA §§ 1–4, ECF No. 6-1).  The CA also included a provision stating that actions arising under the agreement or otherwise relating to Rand's employment with INOW were to be tried in state or federal courts located in Denver, Colorado. (*Id.* § 11(d)).

In 2012, Rand alleges to have negotiated a potential contract for the renewal of services with HP that would have resulted in INOW being paid $2,682,000 over the course of three years. (Compl. ¶ 13).  However, over the course of the remainder of that year, complications arose and INOW was eventually dropped from consideration for performing CDM services for HP (*Id.* ¶ 16).  Thereafter, the HP account was given to another employee, (*id.* ¶ 19), and Rand was eventually phased out completely from working with HP, (*see id.* ¶¶ 21–25).  On November 21, 2014, INOW informed Rand that his time with the company would end as of December 31, 2014. (*Id.* ¶ 26).

In early 2015, Rand brought this lawsuit against INOW in Nevada state court alleging three causes of action: (1) breach of contract, (2) unjust enrichment, and (3) violation of the implied covenant of good faith and fair dealing.  INOW removed to this Court. (ECF No. 1).  On May 27, 2015, INOW filed the instant Motion to Transfer claiming that provisions in the CA require that the case be sent to the District of Colorado. (ECF No. 6).

## II.     LEGAL STANDARD

Generally, 28 U.S.C. § 1404(a) governs whether the venue of a case should be transferred to another federal district.[1]  This is no less true when a party asserts the forum-selection clause of a contract as the basis for transfer. *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 579 (2013).  However, when considering a motion pursuant to § 1404(a) that is based upon a forum-selection clause, the court's review incorporates certain changes to the traditional analysis. *Id.* at 581.

For instance, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Id.*  "Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.*  Beyond this, courts are directed to take note of three specific issues.

First, "the plaintiff's choice of forum merits no weight." *Id.*  "Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.*  This wide departure from the typical rule of "plaintiff's venue privilege" reflects that the plaintiff has already effectively exercised that privilege by agreeing to the forum-selection clause before a dispute ever arose. *See id.* at 582.

Second, a court "should not consider arguments about the parties' private interests." *Id.*  This is so because by agreeing to a forum-selection clause, the parties "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.*

And third, "when a party bound by a forum selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it

---

[1] 28 U.S.C. § 1404(a) states: "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

the original venue's choice-of-law rules." *Id.*  This is a notable exception to the usual choice-of-law rules that apply when a case is transferred pursuant to § 1404(a).  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 494–96 (1941).

Courts should be hesitant to "unnecessarily disrupt the parties' settled expectations" by failing to transfer a case when a valid, unambiguous forum-selection clause so requires. *See Atl. Marine*, 134 S. Ct. at 583.  Thus, "[i]n all but the most unusual cases . . . 'the interest of justice' is served by holding parties to their bargain." *Id.*

## III.   DISCUSSION

INOW argues that pursuant to the provisions contained in the CA, this case should be transferred.  The forum-selection clause at issue states that:

> Any action arising from or relating in any way to this agreement, or otherwise arising from or relating to Employee's employment with Company, shall be tried only in the state or federal courts situated in Denver, Colorado.

(CA § 11(e)).  Additionally, the CA reads that:

> In the event of any direct conflict between any term of this agreement and any term of any other agreement executed by Employee, the terms of this agreement shall control.  If Employee signed or signs any other agreement(s) relating to or arising from Employee's employment with Company, all provisions of such agreement(s) that do not directly conflict with a provision of this agreement shall not be affected, modified or superseded by this agreement, but rather shall remain fully enforceable according to their terms.

(*Id.* § 7).  Rand does not argue that these provisions are invalid.  Rather, he contends that the claims he has brought related to his employment arise under the SCP not the CA, and therefore the terms of the CA are inapplicable in this case.  Rand further argues that since the SCP does not specifically incorporate the CA, applying the CA's forum-selection clause would be in error.  The Court disagrees.

Although the forum-selection clause appears in the CA and not the SCP, the broad

4

language in which it is written makes clear that the clause was to govern any dispute arising between the parties in relation to Rand's employment with INOW.  Section 11(e) of the CA does not limit the choice of forum to only disputes arising under the CA; instead, it explicitly states that "[a]ny action . . . arising from or relating to [Rand's] employment with INOW" is to be adjudicated in Colorado.  The fact that the SCP does not reference the CA does not make this language any less compelling.

Furthermore, the "direct conflict" clause of the CA seems to establish that document as a paramount and controlling employment agreement between Rand and INOW.  Indeed, it appears from the text that if the parties had subsequently included a forum-selection clause  identifying a different forum in a later agreement without specifically disavowing § 7 of the CA, the CA would have remained controlling.

Additionally, the SCP cannot be understood to encompass the entirety of the terms related to Rand's employment with INOW.  That document is short and relates only to how Rand's compensation is handled.  There is no indication that the SCP was intended to be the only document to govern the parties' relationship or that it abrogated or amended any provisions contained in other agreements the parties had signed previously, such as the CA.

Nevertheless, Rand argues that the Court should not enforce the forum-selection clause because it is a "permissive" rather than a "mandatory" provision. (Opp'n 4, ECF No. 14).  He goes further by contending that even if a part of the provision could be construed as mandatory, transfer is only required once the case is ready to be "tried." (*Id.* at 6).  Neither argument is persuasive.

Rand asserts that the language "shall be tried" does not mandate transfer to an exclusive jurisdiction.  To support this assertion, he cites *N. Cal. Dist. Council of Laborers v. Pittsburg-*

5

*Des Moines Steel Co.*, 69 F.3d 1034, 1036–37 (9th Cir. 1995).  His reliance is misplaced.  In that case, the Ninth Circuit held that "[t]o be mandatory, a clause must contain language that clearly designates a forum as the exclusive one."  *Id.* at 1037.  Language that allows a claim to be brought in a particular forum rather than identifying it as the only permitted forum is considered permissive and does not require the court to transfer the case. *Id.* (holding that the language "shall be enforceable" was permissive, not mandatory).

Here, however, the language of the CA is clearly mandatory.  Any action related to Rand's employment with INOW "*shall* be tried *only* in the state or federal courts situated in Denver, Colorado." (CA § 11(e) (emphasis added)).  The Court cannot think of a situation in which a dispute arising under the CA or Rand's employment generally could be brought in any forum other than a court in Colorado without offending this provision.  It directs, requires, and mandates that any action must be tried only in Colorado.

Rand's contention that the Court is not required to transfer the case at this point in the litigation because the provision only requires that it be "tried" in Colorado is even less appealing.  The process of "trying" a case begins at filing of a complaint, and it continues until the end of a trial when judgment is issued. CITE.  Thus, arguing that the case should remain in Nevada until the parties reach the trial phase is absurd.  But what is even more absurd is to think that a court would invest the resources into dealing with all pre-trial matters only to punt the case away when the time for trial actually arrives.

Finally, Rand argues that the case should not be transferred because he has filed a complaint with the Nevada Equal Rights Commission ("NERC") charging INOW of discriminating against him based on his age. (Opp'n 6).  He contends that transferring the case would be judicially inefficient because if he receives a "right-to-sue" letter from NERC then he

might somehow be forced to litigate in two separate forums. (*Id.* at 6–7). But the Complaint in this case currently raises no civil rights issues whatsoever. The fact that Rand has filed a charge of discrimination with NERC does not change this. As of yet, there are no allegations against INOW claiming that it violated the Age Discrimination in Employment Act ("ADEA") and related Nevada law. Rand's filing of a charge is only the beginning of that administrative process and for the Court to alter its ruling on this Motion merely because a charge has been submitted would be improper. At this point in time, Rand can only speculate as to what the outcome of NERC's investigation will be.

Moreover, should Rand be allowed to proceed with his ADEA and related state law claims against INOW, there is no reason why a motion to amend the Complaint to include those claims could not be just as easily filed in Colorado as in this District. Rand has not shown the extraordinary circumstances necessary to prevent transfer pursuant to a valid forum-selection clause to which he agreed. *See Atl. Marine*, 134 S. Ct. at 581. The Court must therefore grant INOW's Motion.

## CONCLUSION

IT IS HEREBY ORDERED that INOW's Motion to Transfer (ECF No. 6) is GRANTED. The Clerk is ordered to transfer this case to the District of Colorado and to close the case administratively in this District.

IT IS SO ORDERED.

Dated: June 29, 2015 _____

_____
ROBERT C. JONES
United States District Judge

7